Note.—See under (1) 30 Cyc. pp. 420. 588 (Anno) ; anno. L. R. A. 1915D, 990 ; 20 R. C. L. pp. 922 et seq.: 4 R. C. L. Supp. p. 1383. (2) 30 Cyc. 588 (Anno).

---

## CITY OF TULSA v. RICHMOND.

No. 16747—Opinion Filed Sept. 21, 1926.

Withdrawn, Corrected, Refiled and Rehearing Denied Feb. 15, 1927.

1. **Eminent Domain—Sovereign Right — Limitation—Proceedings.**

The right of eminent domain is a sovereign right to be exercised by the state through its authorized agencies, and the provisions of Const., art. 2, sec. 24, are not intended as a grant of power, but as limitations upon the exercise of a power which is an attribute of sovereignty. Such limitations are for the benefit and protection of the citizen and property owner, and may be waived by him in a proper case.

2. **Same—Waiver of Appraisement by Party Affected.**

In condemnation proceedings by a city begun and prosecuted against the fee owner

of certain real estate, who excepts to the report of commissioners and demands a jury trial, the owner of a leasehold estate in the same premises who intervenes by leave of court and submits his claim to the court and jury thereby waives appraisement of his interest by commissioners, and this waiver is not a matter of which the city may complain.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; A. C. Brewster, Assigned Judge.

Proceedings in condemnation under the power of eminent domain by the City of Tulsa against R. F. Schofield, in which proceeding Thomas Richmond was granted leave to intervene. From a verdict and judgment in favor of Thomas Richmond upon his petition in intervention, the City of Tulsa brings error. Affirmed.

About April 22, 1924, the city of Tulsa commenced proceedings by condemnation against R. F. Schofield for the purpose of acquiring a portion of lot 6 in block 95, in the original town site, in furtherance of a plan and purpose to widen one of the public thoroughfares in the city of Tulsa. Commissioners were appointed and returned their appraisement, whereupon R. F. Schofield filed exceptions to the report of the appraisers, and demanded a jury trial. After these exceptions and this demand for jury trial were filed, and before the same came on for hearing, Thomas Richmond filed his motion in the proceedings, in which he asked that he be permitted to intervene as a party defendant, and attached to said motion his petition in intervention, which motion was by the court sustained February 11, 1925. In his petition in intervention Richmond alleged, in substance, that he had a leasehold interest in the premises sought to be condemned, and that he had erected thereon substantial and valuable improvements, and that he was conducting thereon a business of carpenter, cabinet-maker and mill worker; that he had been notified by the city of Tulsa to remove his improvements, and to vacate that portion of lot in block 95, which was sought to be condemned; that the tearing down and removal of that portion of his buildings covering the portion of said lot sought to be condemned would involve considerable expense, would damage the remainder of his building, and would diminish the value of his leasehold interest; intervener itemized his damage and asked to be compensated therefor in the sum of $2,-841; attached to the petition in intervention was a copy of a written lease contract dated April 25, 1918, for a period of one year, which bore indorsements thereon showing renewals and extensions thereof from term to term, the last indorsement being dated November 3, 1923, and extending and renewing the contract for a period of two years from April 26, 1924. This contract was signed by R. F. Schofield and Thomas Richmond, and was acknowledged before a notary public on the date of the last extension thereof, November 3, 1923.

Thereafter the cause came on for trial before the court and a jury, resulting in a verdict in favor of the intervener for the sum of $475, upon which verdict the trial court entered judgment. After unsuccessful motion for new trial the plaintiff, city of Tulsa, has brought the case here by petition in error with case-made attached for review of the judgment in favor of Thomas Richmond, the original defendant, R. F. Schofield, not being a party to this proceeding in error.

H. O. Bland and Harry L. S. Halley, for plaintiff in error.

Houston B. Tehee, for defendant in error.

Opinion by LOGSDON, C. There are 12 assignments of error in the petition in error, but all of these are embraced within two propositions stated and relied on in the brief of the city, as follows:

"First, the petition of Thomas Richmond, as intervener in this case, fails to state facts sufficient to constitute a cause of action against the city of Tulsa, or sufficient facts to authorize his being made a party to this lawsuit.

"Second, the trial court committed error in admitting incompetent and immaterial testimony offered by defendant in error over objection and exception of plaintiff in error."

Under the first proposition, the city of Tulsa makes two contentions: (a) That if the lease of intervener, Richmond, was a valid and subsisting lease, his leasehold was not appraised by commissioners, and he was not entitled to have his damages assessed by a jury without appraisement; (b) that the lease had expired prior to the commencement of condemnation proceedings. As sustaining its first contention the city relies on certain language contained in section 24 of article 2 of the Oklahoma Constitution. The language of that section, italicized and relied on in its brief, reads:

"Such compensation, irrespective of any benefit from any improvements proposed,

shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law."

It is urged that the intervention permitted in this case, and the submission of intervener's claim to a jury without prior appraisement, deprive the city of a constitutional right. The exact language of the brief is:

"And we submit the city of Tulsa has been deprived of one of its legal and constitutional rights."

It is not considered that the language of the constitutional provisions above quoted, or any other language of that section, confers any rights upon the city. The right of eminent domain is a sovereign right, but its exercise by the state, or by any of its authorized agencies, is limited by the constitutional provisions of art. 2, sec. 24, and that limitation is recognized by the statutory proceeding authorized. Comp. Stat. 1921, sec. 5501. These provisions must be construed as limitations in favor of the property owner rather than as grants to the sovereignty. Arthur v. Board of Com'rs of Choctaw County, 43 Okla. 174, 141 Pac. 1; Stinchcomb et al. v. Oklahoma City, 81 Okla. 250, 198 Pac. 508. Being a limitation upon the sovereign power to condemn property, rather than a grant of such power, the property owner, in whose behalf such limitation was fixed, may waive its benefits in a proper case. By reason of the proceedings commenced against R. F. Schofield, the fee owner, his exceptions to the report of the commissioners, and his demand for a jury trial, the district court acquired jurisdiction of the proceeding, with full power to permit amendments, or to admit new parties, as in other "civil actions in the district court." Comp. Stat. 1921, sec. 5503. By filing his motion for leave to intervene, and by thereafter filing his petition in intervention, after his motion was sustained, intervener submitted himself to the jurisdiction of the district court and waived his right of appraisement. Of this the city may not complain.

Under its second contention, it is urged by the city that intervener's rights under his lease terminated prior to the commencement of the condemnation proceedings. This contention is based upon the language of, and an interlineation appearing in, the indorsement on the lease, purporting to be a second renewal and extension thereof. This indorsement reads:

"Tulsa, Okla. Apr. 11/22.

"It is agreed that this contract is continued for another two years from Apr. 25, 1922.

"(Signed) R. F. Schofield,
"Thos. Richmond."

On the original lease, which was introduced in evidence, it appears that the term of extension was first written "another year," but at some uncertain later date, the word "two" was interlined after the word "another". It is urged by the city that this change was made after the petition in intervention was filed, because on the exhibit of the lease attached to said petition, the indorsement appears as originally written. From this it is argued that the lease expired under the terms of said second renewal in April, 1923, and that when these proceedings were commenced on April 22, 1924. the intervener had no leasehold estate in the premises, but was a mere tenant at will under the provisions of Comp. Stat. 1921, sec. 7342.

This contention entirely overlooks the third indorsement shown on the lease contract, which reads:

"It is agreed that this contract is continued for another two years from Apr. 26/ 24-- this --Nov. 3, '23.

"(Signed) R. F. Schofield,
"Thos. Richmond."

If, as stated in this indorsement, the contract was to be "continued" two years from April, 1924, it must have been recognized by the immediate parties as being an enforceable contract up to that date. A contract which has no legal existence cannot be "continued" in force. It did not have to be in writing for the year following April 25, 1923.

Regardless of whether the written lease contract expired under the terms of the second indorsement in April, 1923, it is clearly evident that on November 3, 1923, the parties recognized the continuing existence of legal relations between them, and expressly readopted the original contract, with the alteration as to dates expressed in the third indorsement. Intervener continued in possession after April, 1923, and there is no suggestion of any change in the legal relations between them after that date and prior to April 26, 1924. Under the terms of the original contract the building placed on the lots by intervener did not become a part of the realty, and, in the absence of a contrary showing, it must be presumed that the proper authorities assessed taxes for the benefit of the city against this building as the property of

intervener, being required so to do by law, (Comp. Stat. 1921, sec. 7369.) Intervener's uninterrupted and peaceable possession, coupled with a taxable interest in the property, was sufficient notice to the city of the nature and extent of his rights. Under such circumstances the city is bound by the language of Comp. Stat. 1921, sec. 7374, and cannot now be heard to say that intervener was a mere tenant at will when it commenced the instant proceeding.

Neither contention of the city under its first proposition can be sustained.

Under its second proposition, the only complaint made by the city is that the court erred to its prejudice in permitting intervener to introduce the lease contract in evidence, its theory being that the interlineation in the second indorsement, heretofore pointed out, was such a variance from the exhibit of that indorsement attached to the intervening petition as to mislead the city to its prejudice upon the trial. This lease contract was introduced in evidence on the cross-examination by intervener of defendant, Schofield, while he was upon the witness stand in his own behalf. At the conclusion of such cross-examination the following occurred:

"Mr. Teehee (attorney for intervener): This copy of the lease is just about worn out. I want to ask the privilege of substituting a copy of it as our exhibit.

"The Court: Submit it to counsel. Any objection? Mr. Pratt, did you desire to see it?

"Mr. Pratt (attorney for Schofield): That lease? No, we have no objection to it.

"The Court: All right, any objection now to the introduction? Same will be admitted in evidence.

"Mr. Halley (attorney for city): Just want to show our objection, your Honor, as incompetent, irrelevant and immaterial.

"Mr. Teehee: All right, just mark that as intervener's Exhibit 'T'.

"Mr. Halley: Give us our exception."

There is no suggestion anywhere in the record that the city was surprised. No request was made to withdraw its announcement of "ready," and to postpone or continue the trial until it could prepare to meet this unexpected evidence. The contract was unquestionably competent, relevant, and material, as evidence, and germane to the issue under investigation. As this matter is presented by the record of the trial, no error is shown.

For the reasons herein stated, the judg-ment of the trial court is in all things affirmed.

By the Court: It is so ordered.

Note.—See under (1) 20 C. J. pp. 514, 515, §2; p. 516, §3; p. 994. (2) 20 C. J. p. 994, §391.