Bill and Elsie LLOYD, Plaintiffs in Error,

v.

The STATE of Oklahoma ex rel. DEPART-
MENT OF HIGHWAYS of the State of
Oklahoma, Defendant in Error.

No. 41005.

Supreme Court of Oklahoma.

April 25, 1967.

---

E. P. Litchfield, Jr., Tulsa, for plaintiffs in error.

John Paul Walters and Thomas N. Keltner, Oklahoma City, for defendant in error.

HODGES, Justice.

Involved in this condemnation proceeding by the State of Oklahoma, through its Department of Highways, is the taking of .77 of an acre, including all rights of access, together with all rights of access to and from certain existing highways upon which lands of the defendants abutted. The purpose of this acquisition was to accommodate the Broken Arrow Expressway in Tulsa, Oklahoma.

A trial by jury was waived by both parties and the cause was submitted to the trial judge who rendered judgment awarding the defendants damages in the amount of $15,-000.00. After the overruling of a motion for a new trial, the defendants perfected this appeal.

The defendants in their propositions I, II and III challenged the validity, propriety and sufficiency of a copy of the certified minutes of the Oklahoma Highway Commission introduced by the plaintiff to establish that the Commission had made a determination that it was necessary to acquire the property sought in this action and to designate certain highways as "limited access highways." The defendants argue that this document is defective in its description of the property; that it does not recite a majority of the Commission was present; and that it does not establish any legal authority for a "limited access highway."

The tract of land out of which the condemnation is sought in the present action was subjected to two prior condemnation suits. These suits provided for the construction of the Broken Arrow Expressway through the defendants' land, thus dividing the tract into two separate parcels. It appears that the principal emphasis of the defendants' argument is that by virtue of the prior condemnations, together with the additional condemnation in the present action, the certified copy of minutes introduced by the State of Oklahoma does not reflect the complete inaccessibility and the valuelessness of the defendants' remaining property.

These alleged errors were presented to the trial court by the defendant in a pleading entitled "Objections and Exception to the Petition, Notice, Order Appointing Commissioners and Report of Commissioners." The trial court in considering this pleading ordered the plaintiff to produce a resolution determining and declaring a necessity for the taking of the lands and

access rights of the defendants as alleged in the petition. Upon a certified copy of excerpts from the minutes of a meeting of the Oklahoma State Highway Commission on May 2, 1960, being produced, in lieu of a formal resolution, the trial court overruled all objections and exceptions of the defendants.

In Cunningham v. State, Okl., 277 P.2d 990, we said that a formal resolution showing public necessity was not a condition precedent to bringing a condemnation action. We there held that the introduction of the "minutes" reflecting the action taken by the condemnor was sufficient to accomplish the purpose.

We have examined the instrument which recites the minutes of the Oklahoma Highway Commission declaring a public necessity and concur with the trial court that the proffered instrument is adequate and sufficient to satisfy the statutory requirements. The minutes certify that a determination of public necessity for right-of-way acquisition on the Broken Arrow Expressway was made by the State Highway Commission. The minutes described the property being condemned by metes and bounds and then specifically stated:

> "Containing in both parcels 0.77 acres, more or less, *together with all abutters rights, including all rights to access from the remaining portion of defendants' land onto the LIMITED ACCESS HIGHWAY* to be constructed on the above described property, including all rights to light, air, or view therefrom, except, that defendants, their heirs, successors or assigns, shall have the right of access from that portion of their remaining property lying south of the above described property to a public road to be constructed along the south side of the LIMITED ACCESS HIGHWAY." (Emphasis by italics supplied.)

The minutes which were certified to be true and correct reflected that the above action by the State Highway Commission was passed by a unanimous vote.

We conclude that the plaintiff has substantially complied with the statutory requirements, and therefore, find no merit in these contentions of the defendants.

The defendants also complain in their proposition IV that the trial court erred in excluding an exhibit of the defendants which contained the minutes of a regular meeting of the Mayor and Board of Commissioners of the City of Tulsa. The minutes show the approval and adoption of a contract by the City of Tulsa for the purchase of right of way for the Broken Arrow Expressway on a tract of land approximately one mile from the property involved in the present action. We find no error in the ruling of the trial court. There was no evidence that the sale was made freely and without compulsion or that the property was similar in locality, quality and character.

In the same proposition the defendants allege error of the trial court in establishing "ground rules" which restricted the evidence of value to testimony from expert witnesses. The defendants do not argue, nor is it apparent, how they were prejudiced by the ruling of the court and we attach no significance to their complaint. In any event, it appears from the trial court's remarks that this limitation was intended to prevent evidence of similar sales of property showing the amount of the sales price solely from the recorded instrument or contract of sale. This excluded evidence would have little, if any, probative value in this dispute. It is well settled that the range of inquiry regarding the fair market value of condemned property rests largely in the discretion of the trial court, whose action in admitting or excluding evidence as to value will not be disturbed on appeal unless there has been an abuse of such discretion. Owens v. Oklahoma Turnpike Authority, Okl., 283 P.2d 827, appeal dismissed 350 U.S. 893, 76 S.Ct. 155, 100 L.Ed. 785; City of Tulsa v. Horwitz, 131 Okl. 63, 267 P. 852.

The defendants next contend in proposition V and VI that the trial court

erred in rejecting the testimony of the defendants' witnesses; failed to give due weight to the evidence of the defendants; and ignored the uncontroverted testimony showing the costs and expenses imposed upon the defendants for the erection of entrance ways onto the defendants' remaining property along the service and section line roads.

Both parties waived a trial by jury, choosing instead to present their evidence to the trial judge for determination. The fact that there is much disparity as to the amount of damages between the witnesses for the plaintiff and defendants, and the trial court chooses to accept the lowest amount of estimated damages, is not error in and of itself. The expert witnesses of the plaintiff were shown to be qualified and the amount of damages awarded by the court was within the range of the expert testimony presented. The weight and credibility of expert testimony as to the value of condemned property is to be determined solely by the trier of fact. Oklahoma Turnpike Authority v. Burk, Okl., 415 P.2d 1001. Whether or not that determination by the trial court is in accord with the greatest weight of competent evidence is not a proper subject for review herein. Allen v. City of Tulsa, Okl., 345 P.2d 443. We have frequently held that this court will not substitute its judgment for that of the jury (or for the trial court, sitting as a jury, as in the instant case) in the matter of damages to be awarded for the condemnation of property for public use, if the judgment is supported by any competent evidence. Arkansas Louisiana Gas Co. v. Ackley, Okl., 410 P.2d 35; Oklahoma Turnpike Authority v. Daniels, Okl., 398 P.2d 515; Oklahoma Turnpike Authority v. Betremieux, 208 Okl. 171, 254 P.2d 771.

It is apparent that the trial court considered in its verdict the necessary expenditures for substitute access to the defendants' remaining land. The trial court in announcing his judgment advised the parties, while he thought damages in the amount of $12,500.00 to be ample, the verdict would be increased by $2,500.00, "lest I make a mistake against the landowner, and maybe the so-called filling station corner has been hurt worse than they think it has, and lest the cutting off of the access from the Bypass road to the small two and one-half acre tract might be more expensive to develop than suggested * * *."

█ The defendants then advance in their Proposition VII that the trial court erred in permitting the plaintiff to erect a fence along the perimeter of the defendants' land that abutted on the service road. In their argument they point out that the plaintiff's petition did not contain a prayer for any right to erect fences or to take title to the defendants' lands. We are of the opinion that the evidence shows the erection of the fence was a natural, logical and necessary consequence of a limited access highway. As we have previously discussed, the petition did seek the condemnation of all of the defendants' rights of access to the limited access highway and the record shows that this element of damage was considered by the trial court in its verdict.

█ In their Proposition VIII the defendants urge that the trial court erred in arriving at the value of their property by failing to consider the highest and best use of their property was for commercial purposes and they argue that the extent of damages upon condemnation must be measured by this usage of the land. The plaintiff points out that, on the date of taking, the property was not zoned for commercial purposes. The plaintiff argues that future zoning of the property for commercial uses was very doubtful and that consequently the market value of the land should be based primarily upon its use for residential development.

In eminent domain proceedings there are many factors which, upon proper presentment, may be considered by the jury, or the trial judge sitting as the jury, that affect the present fair market value of the property being condemned. Evidence of the land's adaptability to a particular use, evi-

dence of zoning regulations, and evidence of plausible and probable changes in the character of the neighborhood and zoning ordinances, are all matters of evidentiary significance. See Cherokee Pipe Line Co. v. Jury, Okl., 393 P.2d 503; People ex rel. Dep't of Pub. Works v. Donovan, 57 Cal.2d 346, 19 Cal.Rptr. 473, 369 P.2d 1; State Roads Comm'n v. Warriner, 211 Md. 480, 128 A.2d 248. In Grand-Hydro v. Grand River Dam Authority, 192 Okl. 693, 139 P.2d 798, we held:

"In determining the market value of real property taken by power of eminent domain, it is not merely the value of the property for the use to which it has been employed by the owner that should be considered, but its adaptability to all purposes, present and prospective, to which it may reasonably be applied by the condemnee must be considered and taken into account in fixing such value."

But these evidentiary matters are to be considered only insofar as they affect the present fair market value of the property. In City of Tulsa v. Creekmore, 167 Okl. 298, 29 P.2d 101, we held:

"In ascertaining the value of land taken under eminent domain, its market value is the test, and not its value for some particular use to which it might be subjected, although its adaptability to this use may be considered as one of the factors in ascertaining its market value."

In the present case the plaintiff presented three expert witnesses who testified as to the value of the property. In the opinion of two witnesses the damages were assessed in the amount of $12,420.00 and the third witness fixed the damages at $12,500.00. The defendants presented two expert witnesses, one estimating damages in the amount of $140,700.00 and the other placing the extent of damages at $286,000.-00. The divergent opinions between the plaintiff's and the defendants' expert witnesses were based primarily upon the adaptable use of the property as affected by the zoning regulations of the City of Tulsa, Oklahoma.

The defendants contend that prior to the present condemnation proceeding the property had commercial value. They assert that the loss of access to existing public highways would seriously impair the desirability and value of the defendants' property for this highest and best use. In support of their contention they point to a survey published by the Tulsa Metropolitan Area Planning Commission in 1959 which showed that the section of land where the defendants' tract was located had been designated as a potential site for a regional shopping center.

The evidence from the plaintiff's witnesses shows that due to its locality and surroundings and based upon their experience with the zoning commission, the market value of the defendants' property before the taking was primarily for residential development.

The defendants were permitted to introduce into evidence testimony of the highest and best use of the land, the probability for change in the zoning regulations affecting the property, the loss of commercial value by reason of the denial of access rights, and the necessary expenditures for new means of access to the defendants' remaining property. This evidence was rebutted by the plaintiff. Upon this conflicting evidence, it was for the trial court to determine whether, prior to the taking, the land of the defendants had any commercial marketable value, and if so, to what extent in the amount of damages had this condemnation affected the fair market value of the remainder of the defendants' property. See Oklahoma Turnpike Authority v. Foster, Okl., 398 P.2d 503. In our opinion the trial court's determination of the facts and judgment thereon in the amount of $15,000.00 is not clearly against the weight of the evidence, but to the contrary, is fully supported by competent evidence.

Judgment affirmed.

All Justices concur.